# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

_____

In re:

    JEFFREY J. PROSSER,

        Debtor.

_____

STAN SPRINGEL, CHAPTER 11 TRUSTEE
OF THE BANKRUPTCY ESTATE OF
INNOVATIVE COMMUNICATION
CORPORATION AND JAMES P.
CARROLL, CHAPTER 7 TRUSTEE OF
THE BANKRUPTCY ESTATE OF
JEFFREY J. PROSSER,

        Plaintiffs/Appellees,

    v.

JEFFREY J. PROSSER,

        Defendant/Appellant.

_____

Bankruptcy No. 2006-30009
Chapter 7

Civil Action No. 3:2013-0087
consolidated with
Civil Action No. 3:2013-0010
Civil Action No. 3:2013-0056
Civil Action No. 3:2013-0057

**Attorneys:**
**Norman A. Abood, Esq.,**
Toledo, OH
**Robert F. Craig, Esq.,**
Omaha, NE
**Lawrence H. Schoenbach, Esq.,**
New York, NY
    *For Appellant*

**Yann Geron, Esq.,**
New York, NY
**Samuel H. Israel, Esq.,**
**William H. Stassen, Esq.,**
Philadelphia, PA
**Bernard C. Pattie, Esq.,**
St. Croix, U.S.V.I.
    *For Appellees*

# **MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the consolidated appeal of five Orders entered by the Bankruptcy Division of the District Court of the Virgin Islands ("Bankruptcy Court") as a result of the conduct of Jeffrey J. Prosser ("Prosser" or "Debtor") and his wife, Dawn Prosser, who the Bankruptcy Court found had dissipated and destroyed a collection of fine wines that had been adjudicated to be property of Jeffrey Prosser's Bankruptcy Estate. On February 23, 2017, this Court issued a Memorandum Opinion and Order that resolved twelve of the thirteen issues that the Prossers had raised in their appeal brief. (Dkt. Nos. 58, 59). In so doing, the Court affirmed: (1) the Bankruptcy Court's September 18, 2012 "Contempt Order," which found the Prossers in contempt of certain Bankruptcy Court Orders that required them to safeguard the wine collection, and subjected them to sanctions representing the value to the Estate of the dissipated and destroyed wines; (2) the January 18, 2013 "Contempt Fees Order," which directed the Prossers to pay the Trustee $528,086.07—representing the attorney's fees and expenses incurred in litigating the Trustee's "Motion to Enforce Turnover Order, for Contempt and for Sanctions"; and (3) the May 24, 2013 "Supplemental Sanctions Order" which directed the Prossers to pay the Trustee $419,135.59—reflecting the net damages to the Chapter 7 Estate resulting from the destruction and dissipation of the wine collection.

On the other hand, the February 23, 2017 Memorandum Opinion and Order reversed, in part, the May 31, 2013 "Compliance Order," which required the Prossers, *inter alia*, to convey title to certain real property they owned at Estate Shoys on St. Croix (the "Anna's Hope Property" or "the Property") to the Chapter 7 Estate to be administered as an Estate asset and sold to satisfy the amount due in the Contempt Fees Order, with the balance, if any, to be applied to pay the

amount due the Estate in the Supplemental Sanctions Order. In addition, the February 2017 Memorandum Opinion and Order reversed in part the "Rule 70 Order," entered on August 23, 2013, which authorized the Trustee to execute Quitclaim Deeds on behalf of the Prossers, and transfer the Anna's Hope Property to the Chapter 7 Estate to sell the Property to satisfy the Contempt Fees Order and the Supplemental Sanctions Order.

In reversing in part the Compliance Order and Rule 70 Order, the District Court held that the ruling in *Law v. Siegel*, 134 S. Ct. 1188 (2014), did not permit the Bankruptcy Court to use exempt property to pay a Trustee's administrative expenses—specifically, the $528,086.07 in attorney's fees and expenses awarded in the Contempt Fees Order. The Court ordered additional briefing on the issue of whether, in light of *Law*, the exempt Anna's Hope Property could be conveyed to the Chapter 7 Estate and sold to pay the $419,135.59 awarded in the Supplemental Sanctions Order.

For the reasons that follow, the Court will reverse those remaining portions of the Bankruptcy Court's Compliance Order and Rule 70 Order that required the conveyance of title, or the transfer by Quitclaim Deed, of the Anna's Hope Property to the Chapter 7 Estate to sell the Property to satisfy the amount due the Estate under the Supplemental Sanctions Order. The Court will remand the case to the Bankruptcy Court for further proceedings consistent with this Memorandum Opinion as well as with the February 23, 2017 Memorandum Opinion.

## I.    PROCEDURAL HISTORY

Because the background and procedural history of these consolidated appeals were set forth at length in the February 23, 2017 Memorandum Opinion, the Court repeats here only the background necessary to provide a context for the ruling at issue.

Jeffrey Prosser as an individual debtor, and two companies he owned, filed petitions for

3

bankruptcy protection under Chapter 11 of the Bankruptcy Code in July 2006. Jeffrey Prosser's individual Chapter 11 case was subsequently converted to a Chapter 7 liquidation proceeding in October 2007 and James P. Carroll was appointed Chapter 7 Trustee. In December 2007, the Chapter 7 and 11 Trustees filed a complaint against Prosser, Dawn Prosser, and their children, pursuant to 11 U.S.C. § 542, seeking all personal property in the Prossers' possession acquired with company funds, which included a collection of fine wine worth between $2.15 and $2.28 million. The Bankruptcy Court entered a Preliminary Injunction ("Turnover Order") directing the Prossers to inventory their personal property and to keep that property, including the wines, "in secure locations and protect [them] from destruction, damage, modification, theft, removal or transfer pending [their] turnover to the Trustee." (No. 07-ap-03010, Dkt. No. 79 at 7; A18)

In January 2008, the Trustee inventoried the wine collection located at the Prossers' St. Croix, Virgin Islands and Palm Beach, Florida residences. In March 2011, following a determination that the entirety of the wine collection belonged to the Estate, the Trustee visited the Prossers' Palm Beach home to collect the wine, and found that "[a]bout 49 percent" of the bottles were missing as compared with the number of bottles counted in 2008. The Trustee's representative travelled to the Prossers' St. Croix residence in July 2011 to pack up and ship the wine stored there, but found hundreds of bottles missing and the remaining wine ruined and not acceptable for sale.

On August 4, 2011, the Trustee filed a "Motion to Enforce Turnover Order, for Contempt and for Sanctions" against the Prossers, alleging that the Prossers failed to protect the wine from destruction in violation, *inter alia,* of the Turnover Order. The Trustee sought a finding of civil contempt against the Prossers, the imposition of sanctions in the form of all legal fees and expenses associated with the Trustee's turnover and contempt litigation, as well as an Order permitting the

4

Trustee to collect the value of the missing and damaged wine from Dawn Prosser's interest in the proceeds of sales of the Prossers' co-owned personal property. (No. 07-ap-03010, Dkt. No. 756 at 4; A62). After an evidentiary hearing, the Bankruptcy Court issued a Memorandum Opinion on September 18, 2012, ruling "that the elements necessary to find the Prossers in civil contempt of court and to sanction were established in this case." (No. 07-ap-3010, Dkt. No. 1005 at 24; A84). The Bankruptcy Court awarded damages to the Estate to compensate for the dissipated and destroyed wine as a sanction against the Prossers, jointly and severally, plus a then-undetermined amount for the Trustee's attorney's fees and expenses. (No. 07-ap-03010, Dkt. No. 1006 at 2-3, A85) ("Contempt Order").

On January 18, 2013, the Bankruptcy Court entered the "Order Approving Amended & Supplemental Application of Chapter 7 Trustee for an Award of Fees and Expenses" ("Contempt Fees Order") which directed the Prossers to pay the Chapter 7 Trustee's attorney's fees and expenses totaling $528,086.07. (No. 07-ap-03010, Dkt. No. 1023; A90). Then, on May 24, 2013, the Bankruptcy Court issued the "Supplemental Sanctions Order," which directed the Prossers to pay the Chapter 7 Trustee $419,135.59—"reflecting the diminution in value of the missing and unmarketable wines." (No. 07-ap-03010, Dkt. No. 1078; A142).

When the Prossers failed to pay the amount due under the Contempt Fees Order, the Trustee filed a motion seeking to coerce compliance. On May 31, 2013, the Bankruptcy Court entered an "Order Coercing the Prossers' Compliance with the January 18, 2013 Contempt Order . . ." (the "Compliance Order"). (No. 07-ap-03010, Dkt. No. 1088; A126). The Compliance Order stated that: 1) the Prossers had not complied with the Contempt Fees Order to pay $528,086.07 in attorney's fees and expenses incurred by the Trustee; 2) they could purge their contempt by paying the amount due in accordance with the terms contained in the Compliance Order; 3) if they

5

defaulted and failed to cure the default, they were required, without the need for further order of the Court, to execute deeds of title conveying ownership of Plots 168, 169, 170 and 171 of Estate Shoys—the "Anna's Hope Property"—to the Chapter 7 Estate; 4) if they failed to comply with those terms, such failure "shall be punishable as a civil contempt of this Court and shall subject the Prossers to arrest and incarceration until such civil contempt is purged"; and 5) upon conveyance of the Anna's Hope Property to the Trustee and, upon Court order, the Property would be administered as an estate asset and sold "solely for the purpose of satisfying the amount due" under the Contempt Fees Order. *Id.* at 3-7. The Trustee would also have the option, following sale of the property, of applying any net proceeds exceeding the amount due on the Contempt Fees Order against the amount due the Estate on the Supplemental Sanctions Order. *Id.* at 6.

The Prossers defaulted under the terms of the Compliance Order, and failed to convey title to the Anna's Hope Property to the Trustee. As a result, the Trustee filed a Motion pursuant to Fed. R. Civ. P. 70 to coerce compliance with the Compliance Order. (No. 07-ap-03010, Dkt. No. 1113; A128). The Bankruptcy Court granted the Motion and entered an Order on August 23, 2013 (the "Rule 70 Order"), in which it authorized the Trustee to execute Quitclaim Deeds "on behalf of Jeffrey and Dawn Prosser, transferring the Anna's Hope Property to the Chapter 7 Estate, and to cause the docketing of such Deeds with the Recorder of Deeds in the U.S. Virgin Islands." (No. 07-ap-03010, Dkt. No. 1133 at 3; A131). The Rule 70 Order also permitted the Trustee to sell the Anna's Hope Property for the purpose of satisfying the amount due on the Contempt Fees Order, with any balance applied to the outstanding amount due on the Supplemental Sanctions Order. *Id.* at 3-4. On September 9, 2013, the Trustee executed the Quitclaim Deeds for the Anna's Hope Property. (No. 13-cv-0010, Dkt. No. 17-4).

On November 13, 2013, the District Court granted the Prossers' Motion to Stay the sale of

6

the Anna's Hope Property pending appeal. (No. 13-cv-0087, Dkt. No. 29 at 9-10, 18).[1]

### A. The February 23, 2017 Memorandum Opinion

In their appeal of the five Bankruptcy Court Orders, the Prossers raised thirteen arguments. The District Court rejected twelve of those arguments in upholding the Bankruptcy Court's finding of contempt against the Prossers; the $528,086.07 assessment of attorney's fees and expenses incurred by the Trustee in enforcing the turnover of the wines; and the $419,135.59 assessment of damages to the Estate representing the diminution in value of the dissipated and destroyed wines, as set forth in the Contempt, Contempt Fees, and Supplemental Sanctions Orders, respectively. (Dkt. No. 58).

With regard to the thirteenth argument, the Prossers claimed that the Bankruptcy Court erred in allowing the Trustee to administer the exempt Anna's Hope Property[2] to pay the Trustee's attorney's fees and expenses because 11 U.S.C. § 522(k) prohibits the remedy allowed by the [Bankruptcy] Court" to "surcharge" the Debtor's exempt property to cover administrative expenses incurred by the Trustee. *Id.* at 58. In adjudicating this issue, this Court analyzed whether § 105(a)[3]—the statutory authority underlying a bankruptcy court's contempt power—permitted the Bankruptcy Court to order the transfer of the exempt Anna's Hope Property to the Estate to be

---

[1] Except when otherwise stated, all reference to filings herein pertain to Civil Case No. 13-cv-0087.

[2] The Bankruptcy Court had found that Jeffrey Prosser "may exempt his entireties interest in Anna's Hope under [11 U.S.C.] § 522(b)(3)(B)." *In re Prosser*, 2013 WL 594312, at *6 and 8 (Bankr. D.V.I. Feb. 14, 2013).

[3] 11 U.S.C. § 105(a) provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

sold, where the proceeds would reimburse the Trustee for $528,086.07 in administrative expenses he had incurred in the turnover and contempt litigation. *Id.* at 60. This Court found that the holding in *Law v. Siegel,* 134 S. Ct. 1188 (2014), controlled and required the Court to resolve that question in the negative. *Id.* at 61-63. Accordingly, the Court held that the Bankruptcy Court erred to the extent that the Compliance Order and Rule 70 Order required the conveyance and sale of the Anna's Hope Property to pay the Trustee's administrative expenses. *Id.* at 63.

The question remained as to whether the Bankruptcy Court also erred when it ordered that proceeds from the sale of the Anna's Hope Property could be used to pay the Supplemental Sanctions Order. The Court ordered supplemental briefing on this issue. (Dkt. No. 59 at 3). *See* Jeffrey J. Prosser's Supplemental Brief (Dkt. No. 61); Supplemental Brief in Support of Chapter 7 Trustee's Appeal Brief (Dkt. No. 62); and Jeffrey J. Prosser's Reply Brief (Dkt. No. 63).[4]

## II. DISCUSSION

### A. Standard of Review

The District Court of the Virgin Islands has jurisdiction to review the Orders of its Bankruptcy Division pursuant to 28 U.S.C. § 158(a). When a district court sits as an appellate court in a bankruptcy matter, it reviews the bankruptcy court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof. *See In re Goody's Family Clothing Inc.*, 610 F.3d 812, 816 (3d Cir. 2010)

### B. Overview of *Law v. Siegel*

In the Order accompanying the February 23, 2017 Memorandum Opinion, the Court directed the parties to brief the remaining issue on appeal, which it articulated as follows:

---

[4] In the February 2017 Memorandum Opinion and Order, the Court continued the stay it had entered on the sale of the Anna's Hope Property because the matters raised by the consolidated appeal had not been completely resolved. (Dkt. No. 58 at 66).

8

> whether, in light of existing law—including the Supreme Court's ruling in *Law v. Siegel*, 134 S. Ct. 1188 (2014)—the exempt Anna's Hope Property may be conveyed to the Chapter 7 Estate and sold to pay the Supplemental Sanctions Order under the authority provided by § 105(a) as a consequence of the Prossers being found in contempt of court.

(Dkt. No. 59 at 2-3) (the "Remaining Issue"). In order to resolve the Remaining Issue, it is necessary to determine whether *Law v. Siegel* applies in this context.

In *Law*, the debtor claimed a $75,000 homestead exemption for his home—the only asset in his Chapter 7 estate. 134 S. Ct. at 1193. He represented that his home was subject to two liens, which would have left no equity in the estate to be recovered by creditors. *Id*. The trustee initiated an adversary proceeding alleging that one of those liens was fraudulent. *Id*. After five years of litigation, during which the trustee incurred $500,000 in attorney's fees, the Bankruptcy Court ruled that the second lien was indeed fraudulent. *Id*. The Bankruptcy Court further ruled that, because of the debtor's misrepresentations and deception in persisting with the litigation, it would grant the trustee's motion to surcharge the debtor's $75,000 homestead exemption to partially defray the trustee's attorney's fees. *Id*. The Ninth Circuit Bankruptcy Appellate Panel ("BAP") affirmed, citing, *inter alia, Latman v. Burdette*, 366 F.3d 774, 786 (9th Cir. 2004), which held that a bankruptcy court had the power to "equitably surcharge a debtor's statutory exemptions" in exceptional circumstances, such as "when a debtor engages in inequitable or fraudulent conduct." *In re Law*, 2009 WL 7751415, at *5 (B.A.P. 9th Cir. Oct. 22, 2009). A panel of the Ninth Circuit also affirmed. *In re Law*, 435 F. App'x 697, 698 (9th Cir. 2011). The Supreme Court granted certiorari and unanimously reversed. *Law*, 134 S. Ct. at 1198.

In its analysis, the Supreme Court focused on a bankruptcy court's statutory authority under 11 U.S.C. § 105(a) to "'issue any order, process or judgment that is necessary or appropriate to carry out the provisions'" of the Bankruptcy Code, as well as the court's "inherent power . . . to

sanction 'abusive litigation practices.'" *Id.* at 1194 (quoting 11 U.S.C. § 105(a) and *Marrama v. Citizens Bank of Mass.*, 549 U.S 365, 375-76 (2007), respectively). The Court held that neither § 105(a) nor its inherent powers permitted a bankruptcy court to "'overrid[e] explicit mandates of other sections of the Bankruptcy Code'" when exercising those powers. *Id.* (internal citation and quotation marks omitted). In so holding, the Court concluded that:

> [W]hatever other sanctions a bankruptcy court may impose on a dishonest debtor, it may not contravene express provisions of the Bankruptcy Code by ordering that the debtor's exempt property be used to pay debts and expenses for which that property is not liable under the Code.

*Id.* at 1198.

Against that backdrop, the Court held that the bankruptcy court's surcharge of Law's homestead exemption to pay the trustee's attorney's fees was unauthorized because it contravened a specific section of the Bankruptcy Code—11 U.S.C. § 522(k).[5] *Id.* at 1195. That statute provides that property exempted under § 522 (the Code provision that specifies the criteria that renders property exempt from the bankruptcy estate, generally for pre-bankruptcy debts) cannot be used to pay *any* administrative expenses.[6] *Id*. The Court found that the attorney's fees and expenses

---

[5] 11 U.S.C. § 522(k) provides:

> Property that the debtor exempts under this section is not liable for payment of any administrative expense except—
> (1) the aliquot share of the costs and expenses of avoiding a transfer of property that the debtor exempts under subsection (g) of this section, or of recovery of such property, that is attributable to the value of the portion of such property exempted in relation to the value of the property recovered; and
> (2) any costs and expenses of avoiding a transfer under subsection (f) or (h) of this section, or of recovery of property under subsection (i)(1) of this section, that the debtor has not paid.

The exceptions, §§ 522(k)(1) and (2), are not applicable here.

[6] *Law* set forth the statutory definition of administrative expenses: "Section 503(b)(2) provides that administrative expenses include 'compensation . . . awarded under' § 330(a); § 330(a)(1) authorizes 'reasonable compensation for actual, necessary services rendered' by a 'professional

incurred by the trustee in prosecuting the fraud litigation constituted administrative expenses that did not fall within the two limited exceptions set forth in § 522(k). *Id*. Accordingly, the Supreme Court held that the bankruptcy court had exceeded its authority under § 105(a) and its inherent powers when it surcharged Law's $75,000 homestead exemption in order to partially pay the Trustee's attorney's fees and expenses because such a result "contravene[d] [an] express provision of the Bankruptcy Code"—§ 522(k). *Id*. at 1198.

Having resolved the issue at hand, the Supreme Court then addressed the trustee's argument that the surcharge did not contravene § 522 because the statute did not require courts to allow an exemption regardless of the circumstances. *Id*. at 1195. The Court opined, in *dicta*, that even if the bankruptcy court could have revisited Law's entitlement to his homestead exemption—which the Court observed it could not do because no one had opposed it, and therefore it had become final before the surcharge was imposed—"§522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate," including a debtor's bad faith or fraudulent conduct. *Id.* at 1196. The Court examined the text of § 522, noting that the statute was "mind-numbingly detailed" concerning what exemptions, and what exceptions to those exemptions, were allowed, and commented that this level of detail did not permit a bankruptcy court to disallow exemptions or create additional exceptions to exemptions on a ground not specified in the statute. *Id*. Since any exemption or any exception to an exemption must be found in § 522, and since the statute did not permit a bankruptcy court to use its general equitable powers to deny or surcharge exemptions or create additional exceptions based on a debtor's wrongful conduct, it could not impose such a penalty for a debtor's improper conduct. *Id*. at 1196-

---

person employed under' § 327; § 327(a) authorizes the trustee to 'employ one or more attorneys . . . to represent or assist the trustee in carrying out the trustee's duties under this title.'" *Law*, 134 S. Ct. at 1195.

11

98.[7]

The Court explained that a bankruptcy court had other means by which it could sanction bad faith conduct, such as by denying a discharge or by imposing sanctions under Bankruptcy Rule 9011 (the bankruptcy equivalent to Fed. R. Civ. P. 11), and asserted that it "may also possess further sanctioning authority under either § 105(a) or its inherent powers." *Id.* at 1198. The opinion concluded by reprising its holding: whatever sanctions a bankruptcy court may impose on a dishonest debtor, "it may not contravene express provisions of the Bankruptcy Code by ordering that the debtor's exempt property be used to pay debts and expenses for which that property is not liable under the Code." *Id.*

### C. The Parties' Arguments

In their Supplemental Brief, the Prossers focus on what this Court deems to be *dicta* in *Law*, where the Supreme Court opined that bankruptcy courts could not use their "equitable powers" to surcharge exemptions based on a debtor's bad faith conduct, or to create additional exceptions to exemptions, if such authority was not provided for in the Code. (Dkt. No. 61 at 6-10). The Prossers contend that "there is no exception set forth in the Bankruptcy Code allowing the Court to surcharge debtor's exempt property for the diminution in value of other nonexempt assets even when that diminution is asserted to have been caused by the debtor's bad faith or contemptuous acts." (Dkt. No. 61 at 9-10). In other words, the Prossers contend that "there is simply no basis in this case to surcharge the Anna's Hope Property for the amount of the diminished value of the wine in this case." *Id.* at 10.

---

[7] The Court also explained how its decision in *Marrama*, 549 U.S. at 372-73—which affirmed the lower court ruling that a debtor forfeited his right to convert from Chapter 7 to Chapter 13 because of bad faith—did not point to a different result because that holding was grounded in statute and did not "contravene express provisions of the Code." *Law,* 134 S. Ct. at 1197.

The Prossers quote extensively from four post-*Law* cases, where bankruptcy courts found that: (1) a trustee's objection to a debtor's amended schedule, based on the debtor's alleged bad acts, was barred by *Law, In re Pratts*, 2015 WL 3484286, at *3-4 (Bankr. D.P.R. June 1, 2015); (2) a creditor's objection to a debtor's exemption, where the debtor exhibited bad faith and engaged in wrongful conduct, was barred by *Law, In re Coyle*, 2016 WL 828459, at *2-7 (Bankr. C.D. Ill. Mar. 2, 2016); (3) a trustee's objection to allowing a homestead exemption, based on a debtor's attempt to amend her schedules to include previously undisclosed assets and to assert exemptions to which she was not otherwise entitled, was not allowed under *Law, In re Lua*, 529 B.R. 766, 772-74 (Bankr. C.D. Cal.), *aff'd,* 551 B.R. 448 (C.D. Cal. 2015), *rev'd and remanded,* 692 F. App'x 851 (9th Cir. 2017); and (4) a trustee's attempt to assert a claim on a pension as property of the estate because the debtor wrongfully failed to disclose it, could not be achieved by the forfeiture or surcharge of that asset, *In re Dively*, 522 B.R. 780, 787 (Bankr. W.D. Pa. 2014), *aff'd sub nom. Walsh v. Dively*, 551 B.R. 570 (W.D. Pa. 2016), and *aff'd sub nom. Walsh v. Dively*, 551 B.R. 570 (W.D. Pa. 2016). (Dkt. No. 61 at 6-10).

In stark contrast, the Trustee focuses on what this Court deems to be the precise *holding* in *Law* and does not address its *dicta*. (Dkt. No. 62 at 3-4). He argues that the holding is inapplicable here because "the Trustee is not seeking to pay the estate's administrative fees by a surcharge of exempt property," but is seeking to collect damages owed by the Prossers as a result of their contemptuous conduct in destroying estate property. *Id.* at 4. He asserts that *Law's* holding did not address that issue, but held only that exempt property could not be surcharged to pay administrative expenses because it contravened the Code. *Id.* Since the damages incurred did not constitute administrative expenses, *Law* and § 522(k) were inapplicable, and the Order transferring the Anna's Hope Property in partial satisfaction of the damages should be affirmed. *Id.* at 6. The

13

Trustee cites *In re Swanson*, 207 B.R. 76 (Bankr. D.N.J. 1997), where the bankruptcy court found debtors in civil contempt; sanctioned them for the amount the estate had been damaged by the debtors' failure to vacate the property; found that the costs of removing the debtors and their property were not administrative expenses; awarded those damages to the trustee; and authorized the trustee to subtract the damages incurred as a result of the debtors' contempt from the debtors' exempt portion of the proceeds of the sale of their residence. *Id.* at 5-6 (citing *Swanson*, 207 B.R. at 81). The Trustee asserts that *Swanson* was not overruled by *Law*. *Id*. at 5.

**D.     Application of *Law v. Siegel* to the Supplemental Sanctions Order**

As the parties' differing positions reflect, the key to resolving the Remaining Issue will be found in how broadly the Court interprets and applies the Supreme Court's opinion in *Law*. *Law's* holding is straightforward: a bankruptcy court cannot use its equitable powers under § 105(a) or its inherent authority in a manner that violates an express provision of the Code. *Law*, 134 S. Ct. at 1194. That holding resolved the particular issue presented in *Law*.

The Supreme Court, however, said a lot more. It expounded at length on how the text of § 522 did not provide any discretion for courts confronted with deciding whether to grant or withhold exemptions to make such decisions based on their own criteria, while citing their equitable powers as authority for such a result. *Id*. at 1196-97. Specifically, courts could not use their equitable powers to punish debtor misconduct by denying or surcharging an exemption unless authority to do so was provided for in the Code. *Id*. at 1197-98. Thus, in effect, *Law* held that if the Code explicitly prevented the bankruptcy court from surcharging exempt property, the exempt property could not be surcharged. *Id*. at 1195. *Law* pronounced in *dicta*, on the other hand, that unless the Code affirmatively allowed the bankruptcy court to deny an exemption or surcharge exempt property, an exception to the exemption could not be made or the exempt property could

14

not be surcharged. *Id*. at 1196-97.

In this case, the Bankruptcy Court ruled that the Anna's Hope Property was exempt under the homestead exemption. *In re Prosser*, 2013 WL 594312, at *5 (Bankr. D.V.I. Feb. 14, 2013). *Law's holding* would not appear to enjoin the Bankruptcy Court from ordering the Property to be sold to satisfy a damages award for the debtor's misconduct because doing so does not appear to contravene any *express* provision of the Code. *Law's* pronouncements in *dicta,* however, would point to a different result. Sale of the exempt property to satisfy a damages award for a debtor who was found in civil contempt would amount to the Bankruptcy Court either withdrawing the homestead exemption or creating an additional exception to § 522's exemptions. Because the statute does not contain such a wrongful conduct exception to section 522—even on a finding of contempt of court—the Court would be creating an additional exception to the existing exemptions—or at the very least, surcharging the exemption—thereby running afoul of *Law's* pronouncements in *dicta*.

The Court's ruling here is guided by the Third Circuit's approach to Supreme Court *dicta*: "The Supreme Court uses *dicta* to help control and influence the many issues it cannot decide because of its limited docket." *In re McDonald,* 205 F.3d 606, 612 (3d Cir. 2000). "Appellate courts that dismiss these expressions . . . increase the disparity among tribunals . . . and frustrate the evenhanded administration of justice . . . ." *Id.* at 612–13 (internal citation and quotation marks omitted). Consequently, the Third Circuit has stated that it "cannot lightly ignore the force of Supreme Court *dicta,*" *Morrow v. Balaski,* 719 F.3d 160, 169 (3d Cir. 2013) (*en banc*), and that such *dicta* "requires serious consideration." *United States v. Marzzarella,* 614 F.3d 85, 90 n. 5 (3d Cir. 2010).

15

When distilled to its essence, the remedy selected by the Bankruptcy Court to address debtor misconduct constitutes a surcharge of exempt property or the creation of a misconduct exemption to section 522. Here, the Court is presented with the question whether to "serious[ly] consider[ ]" the constraints imposed on §105 as set forth in *Law's dicta*, *Marzzarella,* 614 F.3d at 90 n. 5, requiring affirmative authority in section 522 to use its equitable powers, or whether the Court will follow *Law*'s precise holding, which is not constrained by such limitations as long as the remedy does not contravene an express provision of the Code. Based on the Supreme Court's elaborate exposition on the subject and the Third Circuit's approach to Supreme Court *dicta*, the Court will follow how a unanimous Supreme Court considered the intersection of exemptions, debtor misconduct, and the Bankruptcy Court's equitable powers under § 105. Accordingly, the Court concludes that the position advanced by the Prossers must prevail.

The fact that the Supreme Court's discussion in its *dicta* was more extensive than the discussion in the actual holding provides critical insight into how important the Supreme Court considered this issue to be, in "control[ling] and influenc[ing] the many issues it cannot decide because of its limited docket." *In re McDonald,* 205 F.3d at 612. The Supreme Court's effort to provide guidance on this issue has not been lost on the lower courts. Most of the cases citing *Law* rely on, and apply, that *dicta*. *See, e.g., In re Baker*, 791 F.3d 677, 682 (6th Cir. 2015) (observing that it is obligated to follow Supreme Court *dicta*, and that "many lower courts—including nearly all that have identified the language [in *Law*] as dictum—have adhered to [*Law's*] pronouncements") (citing cases); *In re Hoover*, 574 B.R. 413, 418-19 (Bankr. D. Mass. 2017) ("While the Court's specific holding was limited to the interpretation of § 522(k), its further comments on the authority of bankruptcy courts to use their § 105 powers to remedy debtor fraud has 'affect[ed] a sea change among lower courts facing this issue.'. . [I]f such *dicta* is carefully

considered and clearly expressed, it must be followed.") (quoting *Mateer v. Ostrander (In re Mateer)*, 525 B.R. 559, 565 (Bankr. D. Mass. 2015)); *Cooper v. Chilson (In re Chilson),* 2016 WL 1079149, at *7 (W.D.N.C. Mar. 18, 2016) (rejecting trustee's argument that *Law's* dictum should be ignored as "run[ning] afoul of the principle recognized by the Fourth Circuit that lower federal courts are 'bound by Supreme Court *dicta* almost as firmly as by the Court's outright holdings'") (quoting *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) and citing cases).

In addition, courts have swept aside factual and procedural differences between their cases and *Law*, and commented on the broad implications of the *dicta*. As the Bankruptcy Court opined in *In re Arellano*, 517 B.R. 228 (Bankr. S.D. Cal. 2014):

> Thus, although *Law v. Siegel* involved a facially distinct issue, that of surcharge allowing payment of administrative expenses, the Court cannot ignore the Supreme Court's clear mandate in the area of debtor exemptions: when a debtor properly asserts an exemption under section 522, it must be allowed unless the controlling law provides for disallowance. And this is true whether the debtor asserts the exemption at case initiation or at a later point before case closure. There is nothing in section 522 that provides for the denial or disallowance of an exemption based on a debtor's bad-faith conduct . . . In short, the bankruptcy court's equitable powers are now an insufficient basis for exemption denial even if bad faith or prejudice results.

*Id.* at 232. *See also In re Coyle*, 2016 WL 828459 at *3 ("The Coyle Creditors . . . argue that *Law* does not apply because they timely objected to the Debtor's exemption claim and are not trying to surcharge exempt property later in the case. But nothing in *Law* suggests that the timing of the filing of the objection is controlling or even relevant to the inquiry of whether an exemption can be disallowed on non-statutory equitable grounds.").

Moreover, an article from the American Bankruptcy Institute's Northeast 10th Annual Consumer Forum, entitled "Exemption Strategies after *Law v. Siegel*," described the broad impact of *Law*: "[V]irtually every case post-*Law* has ruled that a debtor's claim of exemption in an asset

17

is nearly absolute, and is not affected by the debtor's previous concealment of or fraud or bad faith with respect to such asset." 070915 ABI-CLE 525.[8] The article concluded that, after *Law*,

> the power of a trustee to surcharge assets claim[ed] as exempt by a debtor would seem to be completely abrogated. The Supreme Court apparently left no room to distinguish its holding or to provide for any circumstance in which such power could be invoked. At the very least, no case has appeared in contradiction to the Supreme Court's holding or dicta in *Law*.

*Id.*

Accordingly, the Court holds, based on the Supreme Court's pronouncements in *Law* and the clear message it has sent with regard to cabining a bankruptcy court's equitable powers when seeking to surcharge exempt property in response to a debtor's misconduct, that the Bankruptcy Court erred when it ordered that proceeds from the sale of the Anna's Hope Property could be used to pay the Supplemental Sanctions Order.

This resolution—not allowing the Bankruptcy Court to use exempt property to pay contempt sanctions—does not mean that the Bankruptcy Court cannot impose sanctions for violations of Court Orders. *See Law,* 134 S. Ct. at 1198 ("Our decision today does not denude bankruptcy courts of the essential authority to respond to debtor misconduct with meaningful sanctions.") (internal citation and quotation marks omitted) (citing other remedies); *Walsh v. Free (In re Free)*, 466 B.R. 48, 57 (Bankr. W.D. Pa. 2012) ("The forms of civil sanctions are many and varied, providing judges with the ability to fashion an appropriate remedy.") (citing *Latrobe Steel Co. v. United Steelworkers of Am.*, 545 F.2d 1336, 1344 (3d Cir. 1976)). In fact, "[s]anctions for civil contempt may take the form of incarceration, fines, reimbursement for losses incurred in

---

[8] The Court is aware of only one case that has not followed the *Law* dicta: *In re Woolner*, 2014 WL 7184042, at *2-4 (Bankr. E.D. Mich. Dec. 15, 2014). While *In re Baker*, quoted *supra* p. 16, did not explicitly overrule *Woolner*, it indicated that *Law's dicta* must be followed when a substantial reason for disregarding the *dicta* did not exist, and no such reason had presented itself. 791 F.3d at 682.

pursuing compliance with orders, or a combination of these." *In re Free*, 466 B.R. at 57 (citing *Latrobe*, 545 F.2d at 1344). This Court's ruling herein means only that, while other means may be used to enforce a bankruptcy court's contempt order, a bankruptcy court cannot use the sale of exempt property to pay damages to the estate. *See Law*, 134 S. Ct. at 1198 (opining that, for damages arising post-petition, "a bankruptcy court's monetary sanction survives the bankruptcy case and is therefore enforceable through the normal procedures for collecting money judgments.").

### III. CONCLUSION

In view of the foregoing, the Court will reverse the Bankruptcy Court's May 31, 2013 Compliance Order and the August 23, 2013 Rule 70 Order to the extent that those Orders permit the transfer to the Chapter 7 Estate and sale of the exempt Anna's Hope Property to pay the Supplemental Sanctions Order. The case will be remanded to the Bankruptcy Court for the issuance of any Orders necessary to effectuate the Court's ruling herein and in the Court's February 23, 2017 Memorandum Opinion and Order, or that are otherwise consistent with these Opinions. Further, given that all of the issues raised in this appeal have now been resolved, the Court will lift the stay imposed by the Court's November 15, 2013 Order. (Dkt. No. 23).[9]

An appropriate Order accompanies this Memorandum Opinion.

Date: June 19, 2018  _____/s/_____
WILMA A. LEWIS
Chief Judge

---

[9] The Court will issue an Opinion, in due course, that addresses its Order to Show Cause entered on December 8, 2017. (Dkt. No. 88).